**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEVIN L. JEFFERSON,

                    Plaintiff,

       - v -                                 Civ. No. 9:13-CV-513
                                                         (LEK/RFT)

WILLIAM T. HAGGETT, *Superintendent*; JEAN HUFF,
*Sr. Corrections Counselor*; PAMELA RAYMOND;
*Law Librarian*,

                      Defendants.

**APPEARANCES:**　　　　　　　　　　　　　　　**OF COUNSEL:**

KEVIN L. JEFFERSON
*Pro se* Plaintiff
#8 Candlewood Road
North Bayshore, NY 11706

HON. ERIC T. SCHNEIDERMAN　　　　　　　　　CHRISTOPHER W. HALL
Attorney General of the State of New York　　　　　Assistant Attorney General
Attorney for Defendants
The Capital
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

On March 14, 2013, *pro se* Plaintiff Kevin L. Jefferson filed this civil rights action in the Eastern District of New York,[1] pursuant to 42 U.S.C. § 1983, arising

---

[1] On May 2, 2013, this action was transferred to the Northern District of New York. Dkt. No. 5, Transfer Order, dated May 2, 2013.

from his confinement at Mt. McGregor Correctional Facility, where he alleges that the Defendants retaliated against him in violation of the First Amendment. Dkt. No. 1. On September 24, 2014, Defendants filed a Motion for Summary Judgment to dismiss this action in its entirety.² Dkt. No. 30. Plaintiff did not file a response in opposition.

## I. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the

---

² In their Motion for Summary Judgment, Defendants' argue that Plaintiff's conspiracy claim is "wholly without merit." Dkt. No. 30-5, Defs.' Mem. of Law, at p. 13. However, the Court finds it unnecessary to address this argument as we do not discern a conspiracy claim in the Complaint and Plaintiff has stated that "the nature of the suit" concerns retaliation. Dkt. No. 30-4, Christopher W. Hall Decl., Ex. A, Kevin L. Jefferson Dep., dated June 25, 2014, at p. 65.

nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact

to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Pursuant to the Local Rules of Practice for the Northern District of New York, "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y. L.R. 7.1(b)(3); *see also Douglas v. New York State Div. of Parole*, 1998 WL 59459, at *1 (N.D.N.Y. Feb. 10, 1998) (noting that plaintiff's failure to oppose defendants' dispositive motion, and his failure to show good cause

for the omission, may alone justify granting the motion). However,"[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id*.; FED. R. CIV. P. 56(c). Because Plaintiff has failed to raise any question of material fact, the Court will accept the facts as set forth in Defendants' Rule 7.1 Statement of Facts ("7.1 Statement"), supplemented by Plaintiff's verified Complaint (Dkt. No. 1), as true. *See Lopez v. Reynolds*, 998 F. Supp. 252, 256 (W.D.N.Y. 1997).

### B. Material facts

Plaintiff was convicted on or about August 21, 2008, and sentenced to a determinate two-year sentence to be followed by two years of post-release supervision. Compl. at p 2.[3] Plaintiff was ultimately transferred to Mt. McGregor. *Id.* at p. 3. While there, on or about June 5, 2009, Plaintiff was given permission by the Facility's Law Librarian, Pamela Raymond, to assist Inmate Clarke in preparing for his upcoming disciplinary hearing. *Id.* Plaintiff did not complete his legal work

---

[3] The Court will refer to the page numbers automatically assigned by this Court's Case Management Electronic Case Files System when citing to the Complaint as it is unpaginated and does not consist of structured sequenced paragraphs.

in time for Clarke's hearing. *Id.* at p. 5. Clarke attended the disciplinary hearing and was found guilty of all of the charges. *Id.* On or about June 19, 2009, Plaintiff wrote a letter to the New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner's Office "detailing [his] grievances concerning Clarke's disciplinary matter." *Id.*

On June 23, 2009, Plaintiff was released from prison. Dkt. No. 30-4, Christopher W. Hall Decl., Ex. A, Kevin L. Jefferson Dep., dated June 25, 2014, at p. 35. At his home, Plaintiff received a response to his letter from DOCCS Deputy Commissioner;[4] the response stated that it was the Department's policy to not discuss inmate matters with other inmates and that a copy of Plaintiff's letter will be forwarded to Mt. McGregor's Superintendent. *Id.* at p. 37.

On or about March 8, 2010, Plaintiff was returned to Mt. McGregor for violating his parole, but was scheduled to be released soon thereafter on April 23, 2010. *Id.* at pp. 26 & 64. Upon his arrival, Inmate Oakes asked Plaintiff to assist him with an appeal of a denial of his application for temporary release. Compl. at p. 5. On March 9, 2009, Plaintiff sought permission from Raymond to assist Oakes with his appeal; Raymond denied the request. *Id.* at p. 6.

On March 15, 2010, Plaintiff appeared before the Program Committee and

---

[4] The unnamed Deputy Commissioner is not a defendant in this action.

asked to be assigned to the law library. Jefferson Dep. at p. 49. Defendant Huff, a member of the Program Committee, assigned Plaintiff to the law library.[5] *Id.* at p. 51. On March 16, 2010, Plaintiff informed Raymond of his new assignment; according to Plaintiff, Raymond then went to her office, slammed the door, and made a phone call. *Id.* at pp. 51-52. Although Plaintiff could not hear the content of her conversation, he could tell that it was an "intense conversation."[6] *Id.* at p. 52. The next day, Plaintiff received a "memo note[]" from Defendant Huff advising him that he was "no longer assigned" to the law library. *Id.* at p. 53.

Prior to his appearance before the Program Committee, Plaintiff wrote a letter to Superintendent Haggett[7] on March 11, 2010, complaining that Raymond denied his request to provide legal assistance to other inmates. Dkt. No. 30-2, William T. Haggett Decl., dated Sept. 22, 2014, Ex. A, Mem. of Compl., dated Mar. 11, 2010. On April 9, 2010, the Inmate Grievance Review Committee ("IGRC") responded to Plaintiff's March 11 letter and denied his request to be reassigned as a law clerk because "the law library supervisor must approve an assistance request and therefore is within the scope of her duties to deny such request." Haggett Decl., Ex. A, IGRC

---

[5] At all relevant times to this action, Defendant Jean Huff was a Senior Correctional Counselor and member of the Program Committee at Mt. McGregor. Dkt. No. 30-3, Jean Huff Decl., dated Sept. 14, 2014, at ¶ 5.

[6] Plaintiff was watching Raymond through her office window. Jefferson Dep. at p. 52.

[7] This letter was treated as a grievance.

-7-

Resp., dated Apr. 9, 2010. Plaintiff appealed the IGRC's decision to the Superintendent.

At all times relevant to this action, Defendant William T. Haggett was Mt. McGregor's Superintendent. Haggett Decl. at ¶ 1. On April 20, 2010, the Superintendent affirmed the IGRC decision because, pursuant to DOCCS Directive 4483 (III)(E), "Library Supervisors have discretion to determine whether or not it is in the best interest of the facility and other inmates to allow a given inmate to provide legal assistance to other inmates." *Id.* at ¶ 10. At no time did Superintendent Haggett engage in discussions with Raymond or Huff regarding Plaintiff's programming or whether he should be allowed to render legal assistance to other inmates. *Id.* at ¶ 5 & Ex. A, Superintendent Resp., dated Apr. 20, 2010.

Defendant Huff did not know that Plaintiff wrote a letter to DOCCS Commissioner and does not recall placing or removing Plaintiff from programs in 2010. Dkt. No. 30-3, Jean Huff Decl., dated Sept. 14, 2014, at ¶¶ 6-7. However, it was Huff's practice to re-assign an inmate to another program if a supervisor of any program indicated that they did not want to work with that particular inmate. *Id.* at ¶ 8. Although Huff has no recollection of having a discussion with Raymond concerning Plaintiff, if Raymond had asked Huff to remove Plaintiff from her program, Huff would have done so without questioning Raymond's exercise of

discretion. *Id.* at ¶ 11.

## C. Failure to Serve

As an initial matter, the Court must address the fact that Defendant Pamela Raymond, who, upon information and belief, has been terminated from her employment with DOCCS as of November 11, 2011, has not been properly served in this matter. Dkt. Nos. 12 & 14. Under Federal Rule of Civil Procedure 4(c)(1), a plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the Plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[8] Failure to properly serve any defendant in accordance with the Federal Rules will result in a court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

On February 11, 2015, the undersigned issued an Order directing Plaintiff, *inter alia*, to show cause why this action should not be dismissed against Defendant Raymond for his failure to properly serve her in accordance with the Federal Rules. Dkt. No. 35. In particular, the Court requested the following:

> [O]n or before March 20, 2015, in addition to responding to the pending dispositive motion, Plaintiff shall provide an affidavit that shall 1) detail his efforts to identify the whereabouts of Defendant Raymond; 2) state

---

[8] Under the Local Rules of Practice for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y. L.R. 4.1(b).

> whether he intends to pursue his action against Defendant Raymond; and
> 3) establish good cause for his failure to timely effectuate service of process.

*Id.* at p. 4.

Plaintiff was further advised that "[f]ailure to provide an affidavit with all of the above information will result in the Court recommending dismissal of the unserved Defendant." *Id.* Despite the Court's admonishment, Plaintiff has failed to respond to Defendants' Motion for Summary Judgment and comply with this Court's February 11, 2015 Order. More significantly, to this date, Defendant Raymond has not been served with process. As a result, the Court recommends dismissing Defendant Raymond from this action. *See Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 165 (N.D.N.Y. 2007) (dismissing *pro se* plaintiff's claims against four defendants for failing to comply with Rule 4(m) of the Federal Rules of Civil Procedure).

### D. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d at 873 (citations omitted); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

Here, there are no facts indicating that Superintendent Haggett was involved in decisions pertaining to Plaintiff's programing. Furthermore, the fact that

Superintendent Haggett affirmed IGRC's denial of Plaintiff's March 11 Grievance is insufficient to establish personal involvement under § 1983. *Joyner v. Grenier*, 195 F. Supp. 2d 500, 506 (2002); *Pagan v. Corr. Med. Servs.*, 2012 WL 2036041, at *6 (S.D.N.Y. June 6, 2012) ("Courts in this district have repeatedly held that 'affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983.'") (quoting *Manley v. Mazzuca*, 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007) (Karas, D.J.) (further citations omitted). Thus, the Court recommends dismissing Defendant Haggett from this action

### E. Retaliation

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can

be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated by the prisoner's First Amendment expression. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003). To show a causal connection, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such

evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872-73. A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to*, inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendant to show that he or she would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d at 79 (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) & *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)); *see also Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)); *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997).

Here, Plaintiff claims that he was retaliated against for submitting a letter to DOCCS Commissioner "detailing Plaintiff's grievances concerning Clarke's disciplinary matter." Compl. at p. 5; Jefferson Dep. at pp. 33 & 56-57. Although filing an inmate grievance is constitutionally protected activity, *Colon v. Coughlin,* 58 F.3d at 872, it is dubious that Plaintiff's letter constitutes a grievance. In any event, there is no basis to infer that Defendant Huff — or any of the listed Defendants — retaliated against Plaintiff for submitting a letter to DOCCS Commissioner complaining about Clarke's disciplinary hearing: the letter has no relation to Plaintiff's programming, the law library, or his ability or desire to render legal

assistance to other inmates. In addition, Defendant Huff was not named in the letter. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases for the proposition that a plaintiff fails to demonstrate a causal connection when a defendant is not personally named in a grievance or a complaint).

Furthermore, even assuming that Raymond had indeed asked Huff to transfer Plaintiff to another program, Huff would have done so as a program supervisor has broad discretion "to determine whether an inmate should remain in their program, particularly in the law library where the quality of the work could substantially impact other inmates." Huff Decl. at ¶ 10. Therefore, Defendant Huff would have taken the same action despite a retaliatory motive. As a result, the Court recommends dismissing Defendant Huff from this action.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 30) be **GRANTED in its entirety** and that the case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within

which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 10, 2015
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge